## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SCOTT PARRISH MOORE
9824 Fieldcrest Drive
Omaha, NE 68114

      Plaintiff,

v.

HOST HOTELS & RESORTS, INC.
6903 Rockledge Drive, Suite 1500
Bethesda, Maryland, 20817

HOST HOTELS & RESORTS, L.P.
6903 Rockledge Drive, Suite 1500
Bethesda, Maryland, 20817

MARRIOTT INTERNATIONAL, INC.
10400 Fernwood Road
Bethesda, Maryland, 20817

JW MARRIOTT WASHINGTON, DC
1331 Pennsylvania Ave N.W.,
Washington, DC, 20004

JOHN DOE CORPORATIONS 1-10

      Defendants.

CASE NO. _____

**COMPLAINT**

(Jury Trial Demanded)

Plaintiff Scott Parrish Moore, for his causes of action, states and alleges as follows:

### **PARTIES**

1.      In January 2017, Plaintiff Scott Parrish Moore ("Moore") was a 47 year old resident of Omaha, Nebraska.

2.      In January 2017, Defendant Host Hotels & Resorts, Inc., ("Host, Inc.") was

a Maryland corporation, with its Principal Executive Offices located at 6903 Rockledge Drive, Suite 1500, Bethesda, Maryland, 20817.

3.     In January 2017, Defendant Host Hotels & Resorts, L.P. ("Host, L.P.") was a Delaware limited partnership.  It too maintained its principal place of business at 6903 Rockledge Drive, Suite 1500, Bethesda, Maryland, 20817.

4.     In January 2017, Host Inc. was a real estate investment trust, or REIT, which owned various properties around the world but conducted its operations through Host L.P., of which it was the sole general partner.  The management of Host Inc. consisted of the same members who directed the management of Host L.P.  The executive officers of Host Inc. were appointed by Host Inc.'s board of directors, but were employed by Host L.P.  Host L.P. employed everyone who worked for Host Inc. and Host L.P.  As the sole general partner of Host L.P., Host Inc. had exclusive and complete responsibility for Host L.P.'s day-to-day management and control.

5.     In January 2017, Defendant Marriott International, Inc. ("Marriott Inc."), a Delaware corporation, was a worldwide operator, franchisor, and licensor of hotel, residential, and timeshare properties under numerous brand names, with its Principal Executive Offices located at 10400 Fernwood Road, Bethesda, Maryland, 20817.

6.     In January 2017, Defendant JW Marriott Washington DC ("the Hotel") was a hotel located at 1331 Pennsylvania Ave NW, Washington, DC, 20004.

7.     Upon information and belief, in January 2017 Host Inc. was the sole owner of the Hotel or it owned the Hotel with JOHN DOE CORPORATIONS 1-10, the names and addresses of which are unknown.

8.     Upon information and belief, in January 2017 the Hotel's owner(s) was

(were) a party (parties) to or a beneficiary (beneficiaries) of a contract with Marriott Inc. that obligated Marriott Inc. to manage and/or operate the Hotel.

9.      Upon information and belief, in January 2017, at the direction of the Hotel's owner or owners, Host L.P. assisted Marriott Inc. with managing or operating the Hotel and monitored its performance for the Hotel's owner or owners.

## JURISDICTION

10.     This is a civil action to enforce the provisions of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA") and for negligence under the common law of the District of Columbia.

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332 and 42 U.S.C. § 12188.  This Court has supplemental jurisdiction over the common law claims pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), (b)(2), and (c).

## FACTS

13.     Moore is an attorney who is admitted to practice in state and federal courts across the United States.

14.     Moore is a paraplegic, and has been since a 1987 automobile accident his freshman year of college.  Moore has therefore since used a manual wheelchair to ambulate.

15.     Moore served as both a Senior Trial Attorney and Deputy Chief in the Civil Rights Division of the United States Department of Justice where he prosecuted civil rights cases, many of which he filed on behalf of persons with disabilities.

16.    In January 2017, Moore was a partner at Baird Holm LLP, where he represented employers, housing associations, and individuals in disability-rights related matters.

17.    In 2016, Moore accepted an invitation from the National Council of State Housing Agencies ("NCSHA") to sit on a "Fair Housing Compliance and Accessibility Panel" at its "2017 HFA Institute" scheduled for January 2017 at the Hotel.

18.    On Wednesday, January 11, 2017, Moore arrived at the Hotel and located the room where the Fair Housing Compliance and Accessibility Panel would convene and address the HFA Institute's attendees.   Moore found that he and the other panelists would address attendees from a stage.   Moore accessed the stage via the single ramp adjacent to it.   The Hotel either erected both the stage and the ramp or maintained the stage and the ramp on its premises.

19.    Thereafter, for approximately 90 minutes, Moore and the other panelists addressed approximately 100 of the HFA Institute's attendees.   Those attendees (like his fellow panelists) included attorneys, advocates, and other, similarly-situated persons, all of whom work in or in close proximity to the fair housing industry.

20.    After the Fair Housing Compliance and Accessibility Panel segment of the 2017 HFA Institute concluded, Moore left the stage using the same ramp he used to access it.

21.    Moore began to descend the ramp at a reasonable speed.   When he reached the approximate mid-point of the ramp, one of the ramp's panels failed, thereby creating a significant gap between the end of the failed panel and the beginning of the next panel above it.   The front two wheels of Moore's wheelchair

became lodged in the gap and brought it to an immediate stop, which vaulted Moore from his chair and down the ramp.

22.     There were no warning signs posted in or around the ramp to notify Moore that it was unsafe and faulty.  The Hotel did not otherwise warn Moore about the unsafe, faulty ramp before he used it.

23.     Moore broke his fall as best he could with his right arm, although his torso and face still hit the ground with significant force.  Thereafter, Moore lay on the Hotel's floor for a few minutes while his fellow panelists and various attendees looked on. Moore, with the assistance of others, eventually remounted his wheelchair and left the Hotel as quickly as he could.

24.     Moore's right wrist hurt immediately after his fall to the point that he worried he had fractured it.  He nonetheless had to use his right arm and wrist to ambulate throughout his travels back to Omaha, Nebraska.

25.     Moore first visited a doctor as soon as he returned to Omaha on Friday, January 13, 2017, for his right wrist pain.  X-rays later revealed that Moore did not fracture his wrist in the fall.

26.     Over the following months, Moore began to experience tingling in his right forearm and hand.  As it worsened, Moore began to have episodes of numbness and weakness on his right side, emanating his neck, down through his arm, and into his hand.  Eventually, as his weakness worsened, his numbness gave way to pain.

27.     Eventually, the pain and weakness Moore experienced prevented him, for example but not in limitation, from independently transferring from his wheelchair to his automobile, from independently transferring from his wheelchair to his bed, shower, or

other furniture in his home and office, and from exercising as he usually would.

28.     A December 2018 MRI revealed that Moore had cervical spondylosis and disc degeneration at C5-C6 and C6-C7, a left paracentral disc herniation at C5-C6 that narrowed the foramen, mild C5-C6 stenosis, moderate C6-C7 stenosis, and severe bilateral C7 foraminal stenosis.

29.     On August 21, 2019, after conservative treatment failed, Moore underwent a C5-6/C6-7 anterior cervical discectomy and fusion with plating.  He continues to recover.

30.     Moore's January 11, 2017, fall at the Hotel, caused by the Hotel's unsafe, faulty ramp, was the proximate cause of the injuries that necessitated his post-fall conservative treatments and August 21, 2019, surgery.

### COUNT I: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

31.     Moore restates the allegations contained in Paragraphs 1 through 30 above and incorporates them into this Count I.

32.     Moore is a person with a disability as defined by the ADA and its implementing regulations because he has an impairment which substantially limits him in one or more major life activities and which requires him to use a wheelchair for mobility.  42 U.S.C. § 12102; 28 C.F.R. § 36.104.

33.     In January 2017, the Hotel was a place of public accommodation covered by Title III of the ADA.  42 U.S.C. § 12181(7)(A); 28 C.F.R. § 36.104.

34.     The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the . . . facilities . . . or accommodations of any place of public accommodation by any person who owns . . . or

operates a place of public accommodation."  42 U.S.C. § 12182(a).

35.     The ADA's implementing regulations detail administrative and procedural requirements related to public accommodation, including compliance with design and construction standards.   These standards are found in the Americans with Disabilities Act Accessibility Guidelines ("ADAAG"), which are incorporated into the regulations at Appendix A to Title 28, Part 36.  *See* 28 C.F.R. Pt. 36, App. A.

36.     The ADA's implementing regulations also require a public accommodation to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and useable by persons with disabilities."  28 C.F.R. § 36.211(a).

37.     "[A]llowing obstructions or 'out of service' equipment to persist beyond a reasonable period of time" violates the regulations, as does "repeated mechanical failures due to improper or inadequate maintenance."  *Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities*, 56 Fed. Reg. 35544, 35562 (July 26, 1991).

38.     Defendants, through their conduct as alleged herein, violated the ADA by denying Moore full and equal access to Defendants' good, services, facilities, privileges, advantages, or accommodation pursuant to 42 U.S.C. § 12182 and by failing to make alterations which are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, pursuant to 42 U.S.C. § 12183.

39.     Defendants violated the ADA by denying Moore "the full and equal enjoyment of the . . . facilities . . . or accommodations of any place of public accommodation."  42 U.S.C. § 12182(a); 28 C.F.R. § 36.201.

## COUNT II: NEGLIGENCE

40.    Moore restates the allegations contained in Paragraphs 1 through 30 above and incorporates them into this Count II.

41.    On January 11, 2017, Moore was a business invitee of the Hotel.

42.    On January 11, 2017, the Defendants were in control of the Hotel and had a duty to exercise reasonable and ordinary care to keep the Hotel reasonably safe. Defendants breached that duty on January 11, 2017, because they erected and/or maintained an unsafe, faulty ramp for Moore to use.

43.    Defendants had a duty to repair any dangerous condition at the Hotel which they knew about or which they would have discovered through the exercise of ordinary care and that Moore could not reasonably be expected to discover. Defendants breached that duty on January 11, 2017, because they either knew the ramp was unsafe and faulty or could have discovered it was unsafe and faulty through the exercise of care and they failed to repair it.  Moore, on the other hand, could not have reasonably discovered the faulty ramp and was at all times reasonable and prudent.

44.    Defendants had a duty to warn Moore about any dangerous conditions at the Hotel which they knew about or which they would have discovered through the exercise of ordinary care and that Moore could not reasonably be expected to discover.  Defendants breached that duty because they either knew the ramp was unsafe and faulty or could have discovered it was unsafe and faulty through the exercise of care and they failed to warn Moore about it.  Moore, on the other hand, could not have reasonably discovered the faulty ramp and was at all times reasonable

and prudent.

45.   As a direct and proximate cause of the Defendants' breaches, Moore suffered pain and suffering from personal physical injuries, including but not limited to those that ultimately required Moore to undergo surgery.

46.   As a direct and proximate cause of the Defendants' breaches, Moore suffered emotional distress.

47.   As a direct and proximate cause of the Defendants' breaches, Moore has incurred over $75,000 in medical expenses.

## PRAYER FOR RELIEF

WHEREFORE, Moore prays that the Court:

48.   Enter judgment in Moore's favor and against all Defendants for actual/special and compensatory damages in amounts to be proven at trial;

49.   Award Moore his attorneys' fees and costs pursuant to 42 U.S.C. § 12205; and

50.   Grant Moore such other and additional relief as the Court deems just and proper.

## JURY DEMAND

Moore demands a trial by jury on all issues so triable.

Dated January 13, 2020                    Respectfully submitted,


                                          THE LAWRENCE LAW GROUP, PLLC


                                          By:_____/s/ *Andrew J. Lawrence*_____
                                          Andrew J. Lawrence (DC Bar No. 486160)
                                          5335 Wisconsin Avenue NW, Suite 700
                                          Washington, DC 20015
                                          (202) 904-2822
                                          ajl@lawrencelg.com
                                          *Attorney for Plaintiff Scott Parrish Moore*


DOCS/2404370.2